[No. H013717. Sixth Dist. Feb. 7, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO ENRIQUEZ, Defendant and Appellant.

## COUNSEL

Curtis V. Rodriguez for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Bruce Ortega and Mark S. Howell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, J.**—In this action we hold that when a jury is instructed pursuant to CALJIC No. 12.65 (1992 rev.) an instruction defining "under the influence" such as set forth in CALJIC No. 16.831 (1992 rev.) must also be given.

### FACTS AND PROCEDURAL HISTORY

On June 19, 1994, after smoking a cigarette laced with phencyclidine (PCP), defendant and Christine Martinez were outside Martinez's mother's house at 369 Fleming Avenue. When her mother came to the door, she observed Christine was under the influence of PCP and told her she had to leave. Her mother then called 911.

Reserve Deputy Sheriff Michael Phillips, who was on patrol in the area, was told to be on the lookout for a blue Chevy Sprint, occupied by a Hispanic male and female who were possibly under the influence. Phillips drove down Fleming Avenue, passed number 369, and saw a blue Sprint with two occupants parked three houses away. As he slowly passed the parked vehicle, Phillips observed defendant in the driver's seat and the female in the passenger seat. After he passed the automobile, Phillips made a U-turn and parked 25 yards behind the Sprint. After approximately five minutes, defendant started the Sprint and drove in a normal manner into the

driveway at 369 Fleming Avenue. Phillips followed the vehicle and parked 10 feet behind its rear bumper.

Defendant and Christine exited their automobile and Phillips got out of the patrol car. Defendant, walking in a staggered motion, moved toward the rear of his vehicle. When Phillips asked for defendant's driver's license, he noticed defendant was sweating, his eyes appeared glossy, and he had difficulty standing. In slurred and broken speech, defendant asked why he had been stopped.

Phillips checked defendant's pulse, which was beating at 130 beats per minute. The pulse for a normal person is 50 to 60 beats per minute. Phillips measured defendant's pupils with a pupillometer. Defendant's pupils were dilated and fixed; they would not react to light. He had both vertical and horizontal nystagmus. Phillips asked defendant whether he was under the influence, and defendant gave an affirmative response.

After defendant was taken to jail, a blood sample was taken. Laboratory tests confirmed the presence of PCP in defendant's blood.

Based on this evidence, a jury found defendant guilty of driving under the influence and being under the influence of a controlled substance. (Veh. Code,[1] § 23152, subd. (a); Health & Saf. Code, § 11550, subd. (a).) They also found defendant had committed three prior violations of section 23152, had incurred three prior serious felony convictions, and had served two prior prison terms. (Pen. Code, §§ 667, subds. (b)-(i), 667.5.)

### DISCUSSION

When instructing the jury on the charge of driving under the influence, the court read CALJIC No. 12.65. As given, the instruction stated in relevant part: "Count One of the information charges a violation of section 23152, subdivision (a), of the Vehicle Code, defined as follows: Every person who, while under the influence of any drug drives a vehicle, is guilty of a violation of section 23152[a], a crime. [¶] The term 'drug,' as used in this instruction, means any substance or combination of substances, other than alcohol, which could so affect the nervous system, brain, or muscles of a person as to impair, to an appreciable degree, his ability to drive a vehicle in the manner that any ordinary prudent and cautious person, in full possession of his faculties, using reasonable care, would drive a similar vehicle under like conditions. [¶] In order to prove this crime, each of the following elements must be proved: One, a person drove a motor vehicle, and, two, such person did so while under the influence of any drug."

---

[1]All statutory references are to the Vehicle Code unless otherwise indicated.

■ It is settled that a criminal defendant has a constitutional right to have the jury determine every material issue presented by the evidence. The denial of that right constitutes a miscarriage of justice regardless of the strength of the prosecution's case. (*People* v. *Reynolds* (1988) 205 Cal.App.3d 776, 779 [252 Cal.Rptr. 637].) Accordingly, "[i]t is the trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case to the extent necessary to enable them to perform their function. This duty is not always satisfied by a mere reading of wholly correct, requested instructions. [Citation.] A trial court has a sua sponte duty (1) to instruct on general principles of law relevant to issues raised by the evidence [citation]; and (2) to give explanatory instructions when terms used in an instruction have a technical meaning peculiar to the law [citation]." (*Ibid.*; accord, *People* v. *Shoals* (1992) 8 Cal.App.4th 475, 489 [10 Cal.Rptr.2d 296].)

■ The term "under the influence" differs for the purposes of section 23152, subdivision (a) and Health and Safety Code section 11550. "To be 'under the influence' within the meaning of the Vehicle Code, the . . . drug(s) must have so far affected the nervous system, the brain, or muscles as to impair to an appreciable degree *the ability to operate a vehicle* in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties. [Citations.] In contrast, 'being under the influence' within the meaning of Health and Safety Code section 11550 merely requires that the person be under the influence in any detectable manner. The symptoms of being under the influence within the meaning of that statute are not confined to those commensurate with misbehavior, nor to those which demonstrate impairment of physical or mental ability. [Citation.]" (*Byrd* v. *Municipal Court* (1981) 125 Cal.App.3d 1054, 1058 [178 Cal.Rptr. 480], original italics; see also *Gilbert* v. *Municipal Court* (1977) 73 Cal.App.3d 723, 727 [140 Cal.Rptr. 897].)

In *People* v. *Weathington* (1991) 231 Cal.App.3d 69 [282 Cal.Rptr. 170], a jury found the defendant guilty of violating sections 23152, subdivision (a), and 23175, the same offenses as charged in this case. On appeal, the defendant claimed the court erred in rejecting his proffered instruction that the prosecution had to prove the defendant's ability to drive was impaired to an appreciable degree. In rejecting the contention, the Court of Appeal held the then current version of CALJIC No. 16.831 adequately defined the term "under the influence." (231 Cal.App.3d at pp. 80-81.)

The version of CALJIC No. 16.831 in effect at the time *Weathington* was decided provided in relevant part: "A person is . . . [under the influence of a drug] . . . when as a result of . . . [using a drug] [his] [her] physical or mental abilities are impaired to such a degree that [he] [she] no longer has

the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under the same or similar circumstances." The instruction is essentially the same as the 1992 revision which is now in effect.

The Attorney General argues that when CALJIC No. 12.65 is given and the term "drug" is defined, the instruction is sufficient to impart all the elements essential to find a defendant guilty of violating section 23152, subdivision (a). We disagree.

In defining the term "drug," CALJIC No. 12.65 states it is any substance other than alcohol that "*could* so affect the nervous system, brain, or muscles of a person as to impair, to an appreciable degree, [his] [her] ability to drive a vehicle . . . ." (Italics added.) The definition merely states a drug may have the potential to affect driving. In contrast, the definition of "under the influence," approved in *Weathington* provides a person is under the influence for the purposes of section 23152, subdivision (a) when "as a result of using a drug his physical or mental abilities *are* impaired to such a degree that he no longer has the ability to drive a vehicle . . . ." (Italics added.) The definition correctly instructs the jury that the defendant's ability to drive must actually be impaired.

Our view that a definition of "under the influence" is required when instructing pursuant to CALJIC No. 12.65 is reinforced by the fact that a definition of "under the influence" is required when instructing on felony driving under the influence in violation of section 23153, subdivision (a). (See CALJIC No. 12.60.)

In conclusion, we find CALJIC No. 12.65, standing alone, does not fully apprise the jury of the technical definition of an element of the offense. We have examined the record for prejudice (*People* v. *Harris* (1994) 9 Cal.4th 407, 424-427 [37 Cal.Rptr.2d 200, 886 P.2d 1193]), and cannot say the court's failure to instruct fully on the meaning of "under the influence" was harmless beyond a reasonable doubt. Therefore, the conviction for driving under the influence is reversed. Due to reversal of the driving under the influence conviction, we need not consider defendant's sentencing argument.

### DISPOSITION

The conviction for driving under the influence (count 1) is reversed.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied February 22, 1996, and respondent's petition for review by the Supreme Court was denied April 18, 1996.